EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Manuel Correa Márquez Recurrido v. Carmen Juliá Rodríguez Peticionaria | Certiorari 2017 TSPR 98 198 DPR ____ |
|---|---|

Número del Caso: CC-2015-977

Fecha: 7 de junio de 2017

Región Judicial de San Juan

Abogados de la parte peticionaria:

Por derecho propio

Abogados de la parte recurrida:

Lcda. Rosalinda Pesquera De Dávila
Lcdo. Rubén Soto Rodríguez

Materia: Derecho de Familia: Caudal disponible en una comunidad de bienes de una extinta sociedad de bienes gananciales al momento de establecer una pensión ex cónyuge. Potestad de una ex cónyuge, que es copropietaria de un bien de valor sustancial, de solicitar una pensión ex cónyuge al amparo del Art. 109 del Código Civil.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel Correa Márquez

    Recurrido

      v.                CC-2015-0977          *Certiorari*

Carmen Juliá Rodríguez

    Peticionaria

Opinión del Tribunal emitida por la Jueza Presidenta ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 7 de junio de 2017.

Nos corresponde determinar si una ex cónyuge que es propietaria en común pro indiviso de un bien de valor sustancial junto a su ex cónyuge puede solicitar y recibir una pensión por parte de este último al amparo del Art. 109 del Código Civil, <u>infra</u>. Por los fundamentos expuestos a continuación, respondemos en la afirmativa y establecemos como criterio aplicable el potencial del bien en cuestión de proveer sumas líquidas a la parte en necesidad económica al momento de reclamar la pensión.

I

La Sra. Carmen Juliá Rodríguez (peticionaria) y el Sr. Manuel Correa Márquez (recurrido) contrajeron

matrimonio el 23 de marzo de 1984. Casi veinticinco años después, esto es, el 19 de febrero de 2009, el recurrido presentó una petición de divorcio. Así las cosas, el matrimonio fue disuelto mediante sentencia del Tribunal de Primera Instancia del 2 de octubre de 2009, lo que suscitó una serie de reclamos de alimentos contra el recurrido, de los cuales el único pertinente a la controversia ante nuestra consideración es la pensión ex cónyuge que solicitó la peticionaria.

En particular, mediante una *Urgente Moción Solicitando que se Fije Pensión Ex cónyuge*, la peticionaria arguyó que carecía de bienes para cubrir sus necesidades, por lo que tenía derecho a una pensión ex cónyuge en virtud del Art. 109 del Código Civil, 31 LPRA sec. 385. Señaló que su necesidad surgía porque carece de experiencia profesional en vista de que se dedicó a su familia durante el matrimonio y sufría una serie de condiciones médicas que le aquejaban y le impedían trabajar. Además, sostuvo que una vez disuelto su matrimonio, quedó sin efecto una pensión familiar otorgada a la peticionaria y sus hijos como remedio provisional, lo que la dejó desprovista de ingreso alguno. El recurrido, por su parte, se opuso a que se hallara a la peticionaria en necesidad económica y, en la alternativa, sostuvo que cualquier pensión atribuida a ésta debía considerarse un anticipo de su participación en los bienes gananciales una vez se liquidara la sociedad ganancial.

Tras varios incidentes procesales, la peticionaria presentó prueba documental y testifical. Evaluada la prueba,

el Tribunal de Primera Instancia dictó Sentencia y declaró

con lugar la pensión ex cónyuge solicitada. Entre las

determinaciones de hechos del foro primario se encuentran las

siguientes:

5. La [peticionaria] tiene 54 años de edad y es ama de casa. Su preparación académica incluye un grado asociado en comunicaciones; esta no terminó el grado de bachillerato.

6. Al presente esta reside con sus hijos... en una propiedad ganancial localizada en la Urb. Sierra del Río, Calle 9 B-1, San Juan, Puerto Rico. Dicha propiedad tiene 4 cuartos, piscina, gazebo y planta eléctrica.

7. Durante el tiempo en que las partes convivieron como esposos la [peticionaria] se dedicó al cuido de los hijos y del hogar, ya que así lo habían acordado las partes. Sobre este particular, el [recurrido] negó que hubiera prohibido a su esposa trabajar cuando estaban casados, y que el no trabajar era razonable cuando los hijos eran menores de edad, pero no después.

8. No obstante lo anterior, la [peticionaria] realizó trabajos esporádicamente y a tiempo parcial. Entre 1995 y 1998 realizó trabajos a tiempo parcial con la Sra. Tere Bravo, y en un banco por un período de 2 años y para Universal Insurance en o alrededor de 1992. Nunca ha trabajado en el área de comunicaciones.

9. Cuando los hijos de las partes estaban en la escuela, la [peticionaria] realizó trabajos con una pareja de amigos "brokers", pero el acuerdo entre las partes fue que dicho trabajo no podría quitarle tiempo para atender al [recurrido] y el hogar. Posteriormente, la [peticionaria] dejó el trabajo a tiempo parcial porque su padre se enfermó del corazón y se dedicó a cuidarlo hasta su fallecimiento en el año 2000.

10. Aunque posteriormente la [peticionaria] realizó trabajos de artesanía [...] para la venta de accesorios y prendas, esta tuvo que dejar dicha actividad debido a que desarrolló una condición de artritis.

11. Al presente la [peticionaria] padece de varias condiciones de salud que incluyen dolor en las articulaciones compatibles con la condición de

artritis reumatoide, fibromialgia u osteoartritis, padece de asma bronquial crónica, presenta lesiones en la piel y recibe tratamiento siquiátrico por depresión mayor. Debido a dichas condiciones, la [peticionaria] recibe tratamiento médico continuo e ingiere varios medicamentos preventivos y de mantenimiento.

12. Conforme al testimonio del siquiatra[,] José E. Villanueva Arce, desde el año 1982 la [peticionaria] tiene un diagnóstico de depresión mayor, por lo que necesita medicación y sicoterapia y tratamiento siquiátrico de seguimiento. A partir del año 2008, fecha en que el perito comenzó a atender mensualmente a la [peticionaria], su condición depresiva se agravó debido a las circunstancias que motivaron la ruptura del matrimonio de las partes.

13. El doctor Villanueva Arce opinó que la [peticionaria] confronta problemas de concentración y falta de tolerancia al "stress" y que dicha condición le impide trabajar de forma constante, por hora o con otras personas. No obstante, señaló que esta podría realizar trabajos de artesanía, conducir auto, o realizar compras.

14. No obstante lo anterior, el doctor Villanueva Arce expresó que la demandada se encuentra en condición estable, aunque necesita continuar tratamiento por varios meses para mejorar su condición emocional. Su prognosis es de mejoría una vez se concluyan los procesos judiciales que le ocasionan stress.

[...]

16. Además de la condición emocional antes descrita, la [peticionaria] recibe tratamiento por una condición de dolor en las articulaciones, hombro [,] rodillas y caderas. Conforme al testimonio de la reumatológa [sic] Grisselle Ríos Solá, la [peticionaria] presenta síntomas similares al de la artritis reumatoide, la fibromialgia o la osteoartritis, aunque aún no tiene un diagnóstico claro y definitivo. Dicha condición le ocasiona dolor crónico y limitaciones de movimiento para subir escaleras, caminar largas distancias, hacer ejercicios y realizar actividades en el hogar; tampoco debe levantar objetos de más de 15 libras.

17. Para aliviar la referida condición, la [peticionaria] tiene que ingerir varios medicamentos... y recibir tratamiento continuo en

las clínicas de fisiatría, de ortopedia y dermatología....

18. No obstante, en lo que respecta a las actividades que la demandada puede realizar, la doctora Ríos Solá opinó que esta puede conducir un auto, escribir, usar la computadora y hacer movimientos con las manos.

19. Debido a los problemas de salud que ha confrontado la [peticionaria], esta no ha trabajado durante los pasados 14 años.

20. Para atender la condición de asma[,] la [peticionaria] recibe tratamiento médico especial....

21. Mientras la [peticionaria] estuvo casada con el [recurrido], este era el que generaba los ingresos, producto de su trabajo como abogado en el bufete de su padre. De igual manera, el [recurrido] se encargaba del pago de todos los gastos del hogar y de los gastos personales de la [peticionaria]. Los gastos personales incluían compra de ropa, y maquillaje, salón de belleza, pago de servicios de jardinero, gasolina, reparaciones de auto, ropa de los niños, compras de navidad, reparaciones del hogar, salidas al cine y a comer, mesada para almuerzo, gastos médicos, seguro de vida y dinero en efectivo para ella y sus hijos.

22. El único ingreso de la [peticionaria] es el que recibe por concepto de pensión alimentaria vigente, esto es, la suma de $4,017.00 mensuales. Esta no tiene bienes, aparte de la casa donde reside y los muebles y enseres del hogar.

[...]

24. La [peticionaria] no cualifica para los beneficios del Seguro Social. Cuando cumplió 50 años la oficina del Seguro Social le certificó que ella trabajó del 1977 al 1982 y que no acumuló tiempo de trabajo suficiente para recibir beneficios.

25. Debido a la edad, la limitada preparación académica y experiencia laboral de la [peticionaria], así como las múltiples y severas condiciones médicas que le aquejan, esta no tiene la capacidad para trabajar y generar ingresos para su sostenimiento.

> 26. Al presente, la [peticionaria] tiene que pagar la hipoteca de la casa y el mantenimiento, además de los gastos de estudios y necesidades de los interventores, los cuales paga con la pensión alimentaria vigente.[1]

A base de estas determinaciones, el foro primario consideró que la prueba traída por la señora Juliá Rodríguez demostró que estaban presentes las circunstancias del Art. 109 del Código Civil, supra, particularmente el criterio de necesidad económica. Así también, halló probada la capacidad económica del recurrido, cuyo ingreso bruto mensual fluctuaba en $11,000.00. Por esta razón, el tribunal concedió la pensión y la fijó en unas sumas variadas según los gastos atribuidos a la peticionaria y los remedios provisionales otorgados a ésta durante los procedimientos judiciales.

El recurrido acudió al Tribunal de Apelaciones con múltiples señalamientos de error. En cuanto a lo que aquí concierne, planteó que el foro primario había errado al: (1) determinar que el recurrido tenía capacidad económica para pagar tanto la pensión de la peticionaria como la de sus hijos, (2) no especificar que la pensión otorgada a la peticionaria sería considerada un adelanto de su participación en la liquidación de bienes gananciales entre las partes y (3) no tomar en consideración el valor del hogar en el que residía la peticionaria al momento de fijar la pensión ex cónyuge.

Tras examinar los alegatos de ambas partes, el foro apelativo intermedio atendió en conjunto los reclamos sobre la pensión ex cónyuge que se le otorgó a la peticionaria.

---

[1] *Sentencia del Tribunal de Primera Instancia,* Apéndice, págs. 49-53.

Según su interpretación de la jurisprudencia aplicable, el Tribunal de Apelaciones consideró que el foro primario erró al determinar que la peticionaria cumplía con el criterio de necesidad económica a los efectos de ser acreedora de una pensión ex cónyuge. A su juicio, los hechos demostraban que ésta tenía una participación pro indivisa en una propiedad ganancial que en el 2008 tasó $760,000 y cuyo valor se mantenía en $648,000 luego de descontada la carga hipotecaria.[2] Por esta razón, y por contar con "otros bienes muebles" no especificados, el foro intermedio concluyó mediante sentencia que era improcedente el reclamo de una pensión a favor de la peticionaria en virtud del Art. 109 del Código Civil, supra.

Inconforme, la peticionaria presentó un recurso de *certiorari* ante este Tribunal. Señaló que el Tribunal de Apelaciones erró al determinar que ella incumplió con la carga probatoria de su necesidad económica, esto es, que carecía de medios suficientes para vivir según lo requiere el Art. 109 del Código Civil, supra. Tras evaluar la controversia, decidimos expedir el recurso. Con el beneficio de los alegatos de ambas partes, procedemos a resolver si, a la luz del cuadro fáctico ante sí, actuó correctamente el Tribunal de Apelaciones al eliminarle la pensión a la peticionaria.[3]

---

[2] La propiedad constituye la residencia de la señora Correa Márquez, la cual en un litigio previo el foro apelativo intermedio rechazó que continuara cobijada por el derecho a hogar seguro. Véase Correa Márquez v. Juliá Rodríguez, KLAN201500278 (TA, 30 de abril de 2015).

[3] Enfatizamos que nuestra adjudicación del caso se basa en el cuadro fáctico que tuvo ante sí el foro apelativo intermedio, pues somos conscientes de que la propiedad en cuestión fue vendida previo a que se

II

*A.   El caudal ganancial como fuente primaria de alimentos*

Al momento de disolverse un matrimonio, el régimen ganancial conformado por los cónyuges se extingue. Art. 105 del Código Civil, 31 LPRA sec. 381. Al ocurrir esto, "surge entonces una comunidad de bienes compuesta por todos los bienes del haber antes ganancial, en la cual cada partícipe posee una cuota independiente e [sic] alienable con el correspondiente derecho a intervenir en la administración de la comunidad y a pedir su división". Montalván v. Rodríguez, 161 DPR 411, 421 (2004); Calvo Mangas v. Aragonés Jiménez, 115 DPR 219, 228 (1984). La razón de ser de esta comunidad de bienes obedece a que, a pesar de que se ha disuelto el matrimonio, la liquidación de los bienes entre los ex cónyuges no siempre es contemporánea al divorcio. Montalván v. Rodríguez, supra. Es por eso que, en ese ínterin, existe una presunción controvertible de que cada ex cónyuge tiene derecho a la mitad de los bienes que antes eran gananciales. Torres Vélez v. Soto Hernández, 189 DPR 972, 992 (2013).

Esa masa común de bienes que surge de la extinta sociedad de gananciales constituye la fuente primaria para atender el interés económico de cualquiera de los cónyuges. Así lo dispone el Art. 1325 del Código Civil, cuyo lenguaje solo alude a casos de viudez pero por jurisprudencia se ha extendido también a casos de divorcio. Art. 1325 del Código

---

emitiera esta Opinión. No obstante, entendemos que dicha realidad no dispone de la controversia ante nuestra consideración, entiéndase, si la peticionaria tenía derecho a una pensión ex cónyuge mientras la propiedad no se había vendido.

Civil, 31 LPRA sec. 3700;[4] véase Janer Vilá v. Tribunal Superior, 90 DPR 281, 301 (1964). Desde esa perspectiva, el acceso de cada ex cónyuge a los bienes de dicha comunidad ocurre por derecho propio y no como obligación independiente del otro cónyuge. Soto López v. Colón Méndez, 143 DPR 282, 288 (1997).

Por esta razón, antes de solicitar una pensión ex cónyuge, el comunero que interesa acceso a bienes con los cuales alimentarse debe recurrir a la comunidad de bienes. Íd., pág. 292; véase S. Torres Peralta, El derecho alimentario en Puerto Rico, Publicaciones STP, Inc., 2007, págs. 6.50-6.51.[5] El acceso a esos bienes en calidad de anticipos de la participación en una comunidad, dependerá en principio de dos condiciones básicas: (1) que haya existido una sociedad legal de gananciales entre las partes y (2) que dicha sociedad aún no se haya liquidado. Véase Anselmo García v. Sucn. Anselmo García, 153 DPR 427, 435 (2001)(Sentencia)(Op. de Conformidad, J. Hernández Denton).

Ahora bien, es preciso aclarar que, para que un comunero pueda alimentarse de los bienes habidos en la comunidad que compone con su ex cónyuge mientras la misma permanece indivisa, es condición adicional que tales bienes sean

[4] "De la masa común de bienes se darán alimentos al cónyuge superviviente y a sus hijos mientras se haga la liquidación del caudal inventariado y hasta que se les entregue su haber; pero se les rebajarán de éste en la parte en que excedan de lo que les hubiese correspondido por razón de frutos o rentas". Art. 1325 del Código Civil, 31 LPRA sec. 3700.

[5] "[M]ientras haya caudal proveniente de la extinta sociedad ganancial, ya en comunidad, radicada o no la demanda de liquidación de bienes, la excónyuge reclamante tiene derecho a anticipos contra su participación en la comunidad". S. Torres Peralta, El derecho alimentario en Puerto Rico, Publicaciones STP, Inc., 2007, pág. 6.52.

rentables y que dicha rentabilidad sea susceptible de liquidez económica inmediata. Dicha condición se desprende de la jurisprudencia previa de este Tribunal, en particular de lo resuelto en Soto López v. Colón Meléndez, supra. En ese entonces, una señora le solicitaba una pensión alimentaria a su ex esposo puesto que éste controlaba con exclusividad bienes de la extinta sociedad conyugal, incluyendo un negocio en funciones y un inmueble del cual se extraían rentas de alquiler. Tomando eso en cuenta, sostuvimos que no procedía una pensión, sino el "disfrute de los bienes comunes que [hasta entonces] estaban siendo controlados y utilizados exclusivamente por el copropietario". Íd. pág. 292. No obstante, advertimos que lo determinante en estas situaciones era darle acceso a la persona reclamante a una "suma líquida específica periódica de la comunidad que le permit[iera] alimentarse". Íd. Dado que los bienes en cuestión producían frutos y rentas, consideramos que la comunidad era la fuente propicia de esa suma líquida.[6]

En ese sentido, entendemos que la norma de Soto López v. Colón Meléndez, supra, está condicionada a la rentabilidad inmediata de los bienes disponibles en la comunidad compuesta por los ex cónyuges. Esto, pues, como expresa el tratadista español Zarraluqui sobre el caudal disponible entre ex cónyuges, "parece lógico que la ponderación del capital tenga en cuenta la rentabilidad de los bienes, positiva y

---

[6] La opinión de este Tribunal en Soto López v. Colón Meléndez, supra, reconoce que su norma estaba limitada al cuadro de hechos ante su consideración, que incluía frutos y rentas provenientes de los bienes en la comunidad que las partes conformaban. Soto López v. Colón Meléndez, supra, pág. 292 esc. 8 (reconociendo que su determinación estaba "sujeta a ser modificaba si la situación fáctica así lo amerita[ba]").

negativamente, los gastos que precise su mantenimiento y los impuestos y cargas que los graven, así como cualesquiera otras circunstancias que su disfrute pueda proporcionar". L. Zarraluqui Sánchez-Eznarriaga, Derecho de Familia y la Persona, T.VI, Barcelona, Ed. Bosch, 2007, pág. 710. Esa realidad innegable sobre la incertidumbre de un caudal común ha sido a su vez reconocida por este Tribunal al expresar que, una vez se pospone la liquidación de bienes tras un divorcio, coexisten activos y pasivos sobre los cuales pueden "producirse frutos, saldarse deudas, sufrirse pérdidas, obtenerse ganancias o incurrirse en gastos". Montalván v. Rodríguez, supra, pág. 422.

Bajo este espectro, determinamos que el caudal disponible en una comunidad de bienes de una extinta sociedad ganancial será la fuente primaria de alimentos de ex cónyuges siempre y cuando de los bienes en dicha comunidad pueda extraerse una suma líquida específica y periódica que le permita al reclamante alimentarse. Si del análisis de la comunidad de bienes no se desprende que esta produce, o razonablemente producirá, tal rentabilidad en un futuro cercano, el ex cónyuge que reclama una partida líquida con la cual alimentarse tendrá disponible el recurso de la pensión ex cónyuge, una vez demuestre que cumple con los requisitos aplicables a ese derecho.

B. La pensión ex cónyuge en nuestro ordenamiento

Cuando un divorcio coloca en estado de necesidad económica a uno de los ex cónyuges, quien primero responde por esa necesidad, luego de la comunidad de bienes, es el

otro ex cónyuge. La base de esta pensión la provee el Art. 109 del Código Civil, supra, el cual establece que, una vez decretado un divorcio, el Tribunal de Primera Instancia podrá asignarle a cualquiera de los ex cónyuges que no cuente con suficientes medios para vivir "alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del otro cónyuge". 31 LPRA sec. 385. El derecho a solicitar alimentos al amparo de dicho artículo surge del "derecho fundamental de todo ser humano a existir y a desarrollar plenamente su personalidad". González v. Suárez Milán, 131 DPR 296, 301 (1992). En ese sentido, las pensiones alimentarias de ex cónyuges están revestidas del más alto interés público. Cortés Pagán v. González Colón, 184 DPR 807, 814 (2012).

El criterio principal al momento de conceder una pensión ex cónyuge es el binomio constituido entre la necesidad económica por parte del alimentista y la capacidad económica por parte del alimentante. Toppel v. Toppel, 114 DPR 16, 19-20 (1983). Establecidos esos elementos, y el hecho de que la carencia económica haya surgido como consecuencia del divorcio, procede el derecho a la pensión. Morales v. Jaime, 166 DPR 282, 302 (2005). De ahí que, si bien el Art. 109 establece otros criterios a considerar al otorgar la pensión ex cónyuge, éstos solo se toman en cuenta para fijar el monto de la obligación y no como una carga probatoria adicional que deba suplir el reclamante. Íd., pág. 306.

Así, pues, al fijar el monto de la pensión ex cónyuge, el Tribunal también considerará lo siguiente: (1) acuerdos a

los que hubiesen llegado los ex cónyuges; (2) la edad y el estado de salud; (3) la cualificación profesional y las probabilidades de obtener un empleo; (4) la dedicación pasada y futura a la familia; (5) la colaboración con las labores profesionales del otro cónyuge; (6) la duración de la relación conyugal; (7) el caudal y medios económicos y las necesidades de uno y otro cónyuge, y (8) cualquier otro factor que considere apropiado dentro de las circunstancias del caso. 31 LPRA sec. 385. Ahora bien, considerando que estas y otras circunstancias pueden cambiar con el transcurso del tiempo, también hemos dispuesto que los dictámenes sobre pensiones ex cónyuges tienen un carácter dinámico, por lo que están sujetos a modificación según varíe la situación de necesidad del alimentista o la capacidad económica del alimentante. Cortés Pagán v. González Colón, 184 DPR 807, 814-815 (2012).

III

En el caso de autos, no cabe duda de que, a la luz de la determinación de hechos del foro primario, la peticionaria se encuentra en una situación de precariedad económica y el recurrido tiene capacidad económica para apoyarle. Desde esa perspectiva, la controversia ante nuestra consideración se reduce a si la propiedad residencial que obra en el caudal de las partes previo a la liquidación de los bienes es óbice para hallar a la peticionaria en necesidad económica a la luz de la normativa aplicable a alimentos de ex cónyuges.

En la sentencia recurrida, el Tribunal de Apelaciones determinó que la propiedad indivisa entre las partes había

tasado $760,000 en el 2008. Debido a que tenía una deuda hipotecaria de $112,000, aproximadamente, el foro intermedio concluyó que la peticionaria retenía un capital sustancial sobre el bien en cuestión en la medida en que el valor de la propiedad todavía rondaba los $648,000 al descontarle la carga hipotecaria. Según el foro intermedio, la participación en la propiedad derrotaba el reclamo de carencia de medios suficientes para vivir, por lo que consideró improcedente una pensión en virtud del Art. 109, supra, eliminándola así de la sentencia emitida por el foro primario. Al igual que en Soto López, entendemos que "tal acción judicial fue conceptualmente correcta, pero... incompleta". Soto López v. Colón Meléndez, supra, pág. 291.

Según hemos expuesto, la fuente primaria de alimentos de ex cónyuges en casos de divorcio es la comunidad de bienes constituida por aquellos. El análisis del foro intermedio, si bien no lo expone expresamente, hace bien en partir de esa premisa. No obstante, bajo esa lógica concluye que no procedía una pensión ex cónyuge porque la señora Juliá Rodríguez contaba con una participación indivisa de valor sustancial.[7] Entendemos que el Tribunal de Apelaciones, dadas las circunstancias particulares de este caso, falló en proveer un remedio adecuado a base de la vulnerabilidad económica de la señora Juliá Rodríguez, la única propiedad de valor disponible en la comunidad de bienes y la capacidad económica del señor Correa Márquez.

---

[7] *Sentencia del Tribunal de Apelaciones,* Apéndice, págs. 96-97.

Es importante reiterar que en nuestra labor adjudicativa no debemos aplicar mecánicamente los preceptos legales, sin considerar los valores normativos y los casos específicos ante nuestra consideración. Candelario Vargas v. Muñiz Díaz, 171 DPR 530, 543-544 (2007). Esta noción debe aplicar con mayor ímpetu en casos de pensiones alimentarias, los cuales envuelven un interés apremiante del Estado en el derecho fundamental de todo ser humano a existir y desarrollarse plenamente. González v. Suárez Milán, supra, pág. 301. Por eso hemos expresado que, cuando de la institución de alimentos se trata, "no debemos ceñirnos a conceptos rígidos que impidan o dificulten lograr equitativamente [sus] propósitos". Íd.

En este caso, el foro apelativo intermedio rechazó que la peticionaria se encontrara en una situación de necesidad económica por razón de la propiedad que obraba en el caudal común del matrimonio disuelto, supuesto a ser liquidado. El recurrido, por su parte, coincide con el Tribunal de Apelaciones y plantea que la determinación de necesidad económica no puede hacerse a base de la liquidez o la capacidad de contar con dinero en efectivo. Sin embargo, este Tribunal opina precisamente lo contrario, ya que, a los efectos de concluir que un bien económico suple adecuadamente las necesidades alimentarias de una persona, debe considerarse el potencial real de ese bien de proveerle una suma líquida, inmediata y suficiente para alimentarse. Véase Soto López v. Colón Meléndez, supra, pág. 292. Esto, pues, como es sabido, bienes líquidos son "aquellas cantidades

dinerarias de las que se puede disponer *en el momento* por tener la certeza de su monto". Kantara Malty v. Castro Montañez, 135 DPR 1, 36 esc. 26 (1994)(Sentencia)(Op. Concurrente, J. Naveira de Rodón) (énfasis suplido).

En Soto López v. Colón Meléndez, supra, la suma líquida la suplían los frutos del negocio y los bienes que las partes poseían, lo que ciertamente hacía improcedente una pensión ex cónyuge. En este caso, por el contrario, el único bien disponible en el caudal es la propiedad residencial aludida, a la cual no se le puede atribuir rentabilidad pues en estos momentos más bien representa un gasto de vivienda para la peticionaria. Incluso, de venderse, la tangencia económica de ese bien se postergaría y estaría sujeta a las fluctuaciones del mercado que incidan sobre el valor real de la propiedad, que en este caso se tasó previo a la caída del mercado de bienes raíces.

Si bien reconocemos que una comunidad de bienes puede contar con múltiples activos capaces de suplir las necesidades económicas de sus comuneros, la determinación de si, en efecto, así las suple, no debe hacerse en el abstracto. Como ya mencionamos, al tomar en cuenta la masa común de bienes de la extinta sociedad ganancial como fuente primaria de alimentos, debe considerarse la rentabilidad de esos bienes al momento del reclamo de alimentos o en un futuro cercano, con tal de no dejar al reclamante sin sustento injustificadamente. Además, si una determinación judicial sugiere o implica que una transacción particular en torno a esos bienes sería capaz de suplir la necesidad del

reclamante de alimentos, debe tomarse en cuenta la razonabilidad económica de esa transacción desde la perspectiva de las partes. Esto, de manera que la misma no resulte económicamente adversa a los intereses legítimos de estas últimas.[8]

Es por esto que consideramos que erró el Tribunal de Apelaciones al concluir que la participación de la señora Juliá Rodríguez en la propiedad residencial de las partes implicaba que la peticionaria contaba con medios suficientes para vivir. Del expediente se desprende que la peticionaria probó su precariedad económica, particularmente a raíz de su falta de experiencia profesional y sus condiciones de salud. Como hemos expuesto, el primer remedio que tenía disponible la peticionaria eran los bienes del caudal ganancial, pero el único bien con capacidad de suplirle alimentos era la propiedad residencial que ya habitaba, la cual más que un ingreso suponía un gasto para ella por razón de los pagos hipotecarios y de mantenimiento.

Nuevamente, en un caso como éste, atribuirle rentabilidad a ese bien implicaría forzar al reclamante a vender su propiedad residencial y posponer su provisión alimentaria hasta el momento en que la venta ocurra. A su vez, ignora las contingencias inherentes a una venta inmobiliaria, particularmente en momentos de crisis económica

---

[8] Véase I. Ramos Buonomo, Derecho de Familia, 67 Rev. Jur. UPR 827, 831 (1998)(analizando el caso de Soto López v. Colón Meléndez, supra, y mencionando que, por ejemplo, "la división de la comunidad podría resultar en un suicidio económico, pues al recibir una cantidad específica de dinero, en vez de continuar como condueñ[o] de un [bien] que continúe produciendo ingresos[,] eventualmente [la parte] podría quedar desamparada económicamente").

con efectos considerables en la industria de bienes raíces.[9] En circunstancias como estas, no podemos avalar dicho proceder sobre un asunto tan sensible que vulnera la vida y salud de una persona.

Por esta razón, lo justo y legalmente correcto es otorgarle a la peticionaria una pensión que le garantice liquidez económica para alimentarse, disponiendo a su vez que dicha pensión se conceda a cargo de su participación en la comunidad de bienes. De esta manera, se le restarán los pagos recibidos por razón de su pensión ex cónyuge al remanente de los bienes gananciales pertenecientes a la peticionaria una vez se liquide la comunidad.[10] Así las cosas, tras liquidarse la comunidad de bienes, las partes tendrán que comparecer ante el foro primario una vez más para dilucidar si su saldo altera la situación económica de la alimentista de tal manera que se justifique revisar su pensión o si, por el contrario, la misma debe mantenerse.

Por los fundamentos esbozados, se revoca la sentencia del Tribunal de Apelaciones en cuanto a la eliminación de la pensión ex cónyuge y se devuelve el caso al Tribunal de

---

[9] Nuestro análisis no descarta que en casos como estos el uso de una vivienda constituya un valor susceptible de cuantificación económica al momento de fijar la *cuantía* de una pensión, mas no necesariamente a los efectos de negar en su totalidad la necesidad económica de la peticionaria ya probada ante un foro primario. Véase Candelario Vargas, supra, pág. 548.

[10] A diferencia de la *Opinión de Conformidad en Parte y Disidente en Parte*, consideramos que esta es la manera más adecuada de armonizar la normativa pertinente a un caso como éste. Es decir, para no alterar el orden de remedios aplicable, según el cual la fuente primaria de alimentos debe ser la comunidad de bienes, en estos escenarios la pensión concedida se hará con cargo a la comunidad. Esto, claro está, siempre que la liquidación de la comunidad provea suficiente caudal para ello y sin descartar que, dependiendo de ese saldo, la parte alimentista pueda seguir siendo acreedora de una pensión ex cónyuge luego de la liquidación.

Primera Instancia para que proceda conforme a lo aquí resuelto.

Se dictará Sentencia de conformidad.


                                        Maite D. Oronoz Rodríguez
                                             Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel Correa Márquez
       Recurrido
          v.

Carmen Juliá Rodríguez
       Peticionaria                    CC-2015-0977        *Certiorari*


SENTENCIA

En San Juan, Puerto Rico, a 7 de junio de 2017.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la sentencia del Tribunal de Apelaciones en cuanto a la eliminación de la pensión ex cónyuge y se devuelve el caso al Tribunal de Primera Instancia para que proceda conforme a lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez emitió una Opinión de conformidad en parte y disidente en parte a la cual se unió el Juez Asociado señor Estrella Martínez. El Juez Asociado señor Kolthoff Caraballo no intervino. La Juez Asociada señora Rodríguez Rodríguez no interviene.


Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Manuel Correa Márquez

    Recurrido

       v.                      CC-2015-0977     *Certiorari*

Carmen Juliá Rodríguez

    Peticionaria

Opinión de Conformidad en parte y Disidente en parte emitida por el Juez Asociado SEÑOR COLÓN PÉREZ, a la cual se une el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 7 de junio de 2017.

Por no albergar duda alguna de que, en escenarios como el de autos, -- en el que una de las partes, luego de un proceso de divorcio, es titular de un bien común pro indiviso de valor sustancial -- puede proceder una pensión ex cónyuge, siempre que tal bien no sea uno rentable o que produzca cantidades líquidas que permitan el sustento del ex cónyuge peticionario, estamos conformes con esa parte del resultado al que, en el presente caso, se llega en el día de hoy.

Ahora bien, respetuosamente disentimos de aquella parte del resultado en la que se ordena que, cuando exista el mencionado bien

común pro indiviso y se asigne una pensión ex cónyuge, los pagos realizados en concepto de dicha pensión se descuenten -- es decir, que sean a cargo -- de la participación que, al momento en que se liquide dicha comunidad, le corresponda al alimentista. Veamos por qué.

II.

Los hechos ante nos no están en controversia. Como correctamente se señala en la Opinión Mayoritaria, luego de veinticinco (25) años de casados, en el año 2009, el señor Manuel Correa Márquez y la señora Carmen Juliá Rodríguez se divorciaron, creándose así entre ellos una comunidad de bienes post ganancial. Posteriormente, la señora Juliá Rodríguez solicitó una pensión ex cónyuge. Adujo que sufría varias condiciones médicas y que carecía de experiencia profesional para obtener alguna oportunidad de empleo, puesto que durante la vigencia del matrimonio se dedicó al cuido de su familia. Según alegó, tales son las razones por las que carece de ingreso alguno para su sustento.

Así las cosas, luego de evaluar la petición presentada por la señora Juliá Rodriguez, así como la situación económica de ambas partes, el Tribunal de Primera Instancia declaró con lugar la referida solicitud y le ordenó al señor Correa Márquez el pago de una pensión ex cónyuge.

Inconforme con dicho proceder, el señor Correa Márquez

presentó un recurso de apelación ante el Tribunal de Apelaciones. Adujo que el foro primario erró al determinar que éste tenía capacidad económica; al no especificar que la pensión ex cónyuge debía ser considerada un adelanto de la participación en la liquidación de bienes gananciales; y al no considerar que la peticionaria residía en una propiedad en común pro indiviso. A dicha solicitud, la señora Juliá Rodríguez se opuso.

Examinados los planteamientos de las partes, el foro apelativo intermedio revocó la decisión del Tribunal de Primera Instancia. Ello, pues concluyó que la señora Juliá Rodríguez era propietaria en común pro indiviso de la propiedad donde residía con sus hijos, en ese momento valorada en $648,000. Así pues, dicho foro entendió que no cumplía con el requisito de necesidad económica, pues ésta tenía una participación pro indivisa en una propiedad con valor sustancial, así como con otra serie bienes muebles que no fueron especificados, suficientes para poder mantenerse.

Insatisfecha, la señora Juliá Rodríguez acude ante nos mediante un recurso de *certiorari*. En esencia, señala que erró el foro apelativo intermedio al determinar que ésta no probó su necesidad económica y que carecía de medios suficientes para vivir. El señor Correa Márquez se opuso.

Contando con el beneficio de la comparecencia de ambas partes, este Tribunal expidió el recurso ante nos y, en

esencia, al disponer del mismo resuelve que, si bien puede proceder la pensión ex cónyuge en aquellos casos en que un alimentista sea propietario en común pro indiviso de un bien que no genere rentas líquidas, las cantidades otorgadas en concepto de dicha pensión -- de concederse la misma -- deberán ser descontadas de la participación de dicho alimentista, una vez se liquide la comunidad de bienes.

Como mencionamos anteriormente, con la primera parte de ese resultado estamos conformes. Disentimos de aquella parte del resultado que establece que, en este tipo de caso, las cantidades otorgadas en concepto de pensión ex cónyuge deberán ser descontadas de la participación de dicho alimentista, una vez se liquide la comunidad de bienes. Nos explicamos.

III.

Como se sabe, en materia de divorcio, es harto conocido que el origen de la pensión ex cónyuge surge de la obligación de los cónyuges de alimentarse y brindarse socorro mutuo. Véase *Soto López v. Colón Meléndez*, 143 DPR 282, 288 (1997). Así pues, para que proceda la concesión de este tipo de pensión, es requisito indispensable que exista una necesidad económica de una de las partes y, además, que la misma sea a consecuencia del divorcio; cuando ambas condiciones se encuentran, procede la reclamación de alimentos al ex cónyuge al amparo del Artículo 109 del

Código Civil, 31 LPRA sec. 385. *Morales v. Jaime*, 166 DPR 281 (2005).

Establecidas ambas condiciones, el Artículo 109 del Código Civil, *supra*, establece aquellos criterios que deben considerarse para establecer la cuantía de la pensión, mas no para su concesión. Entre estos criterios, se encuentran los siguientes:

> (a) Los acuerdos a que hubiesen llegado los ex cónyuges.
>
> (b) La edad y el estado de salud.
>
> (c) La cualificación profesional y las probabilidades de acceso a un empleo.
>
> (d) La dedicación pasada y futura a la familia.
>
> (e) La colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge.
>
> (f) La duración del matrimonio y de la convivencia conyugal.
>
> (g) El caudal y medios económicos y las necesidades de uno y otro cónyuge.
>
> (h) Cualquier otro factor que considere apropiado dentro de las circunstancias del caso. Art. 109 del Código Civil, *supra*.

Por último, en cuanto a la figura de la pensión ex cónyuge, precisa señalar que, la determinación del monto en alimentos a los cuales tendrá derecho el alimentista debe realizarse en proporcionalidad al caudal o medios del ex cónyuge alimentante y a las necesidades del ex cónyuge alimentista. *Cortes Pagán v. González Colón*, 184 DPR 807 (2012); *Cantellops v. Cautiño Bird*, 146 DPR 791 (1998);

*González v. Suárez Milán*, 131 DPR 296 (1992).

Como se puede apreciar, la normativa antes expuesta, a todas luces, ata la concesión de una pensión ex cónyuge al requisito de **establecer la necesidad económica de una de las partes como consecuencia de su divorcio**. Es decir, si tal necesidad económica como consecuencia del divorcio no se logra demostrar, no hay derecho a una pensión ex cónyuge.

Lo anterior es necesario tenerlo muy presente, particularmente en casos como el de marras donde la figura jurídica de la pensión ex cónyuge comparte espacio con la figura jurídica de la comunidad de bienes. **Recordemos que este Tribunal claramente ha establecido que el concepto de alimentos entre ex cónyuges no es afín al régimen de la comunidad de bienes.** *Soto López v. Colón Meléndez*, **143 DPR 282, 288 (1997)**.

Al respecto, y según ha sido sentenciado por este Tribunal, que las referidas figuras jurídicas no sean afines tiene su razón de ser en que los alimentos entre ex cónyuges tienen su fundamento en el deber jurídico establecido en el Art. 109 del Código Civil, *supra*, de las partes prestarse mutuo socorro cuando no cuenten con medios suficientes para vivir. Dicha obligación supeditada, claro está, a la existencia de una situación de necesidad económica. Mientras que, por otro lado, la participación de los comuneros en la administración y disfrute de los bienes

de la comunidad es un derecho propio y para hacerlo valer no hay que demostrar necesidad alguna. *Soto López v. Colón Meléndez*, *supra*, a la pág. 288. **En establecer esta diferencia es en lo que, a nuestro juicio, falla la Opinión emitida por el Tribunal.**

Y es que al resolver que, al momento de liquidar una comunidad de bienes post ganancial, el dinero recibido en concepto de pensión ex cónyuge debe tratarse como una adelanto de la participación del ex cónyuge alimentista en la referida liquidación de bienes, lejos seguir los lineamientos establecidos en *Soto López v. Colón Meléndez*, *supra*, -- donde se le da un tratamiento distinto a las figuras jurídicas de pensión ex cónyuge y comunidad de bienes --, este Tribunal opta por, de manera errónea y desacertada, entremezclar las mismas. Al así hacerlo, una mayoría de los jueces y juezas que forman parte de este Alto Foro, derrotan el propósito de lo que es, en sí misma, una pensión ex cónyuge, pues al convertir las sumas de dinero que se brindan por concepto de este tipo de pensión en un mero adelanto de la participación en una comunidad de bienes post gananciales, se desnaturaliza esta figura jurídica, que como vimos <u>**es una atada al criterio de necesidad económica.**</u>

Si la pensión ex cónyuge, en casos como el de autos, debe considerarse como un mero adelanto de la participación en una comunidad de bienes post gananciales, ¿para qué la exigencia jurisprudencial de demostrar necesidad económica,

como consecuencia del divorcio, al momento de solicitar una pensión ex cónyuge? ¿Para qué? **Si, al final del día, según resuelve este tribunal, la pensión ex cónyuge concedida sería a cargo de la propia alimentista en la medida en que los pagos en tal concepto serán descontados de su participación en la comunidad post ganancial.** Es decir, la pensión ex cónyuge la terminaría pagando, con su propio pecunio, la alimentista que alegadamente la necesitaba. Lo anterior resulta en un contrasentido. Para ello no es necesario demostrar necesidad económica.

En fin, la interpretación que hoy hace una mayoría de este Tribunal sobre el alcance de las figuras jurídicas en controversia no nos convence. La misma no responde a los intereses que pretende proteger la normativa que gobierna los asuntos en el campo del derecho de familia.

Así pues, si bien estamos conformes con reconocer el derecho a una pensión ex cónyuge en aquellos escenarios en que existan bienes en común pro indiviso pero que no son rentables o brindan cantidades líquidas que permitan el sustento del ex cónyuge, en lugar de determinar que el dinero recibido en concepto de pensión ex cónyuge se trate como una adelanto de la participación del ex cónyuge alimentista en la comunidad de bienes post gananciales, le hubiéramos dado un trato por separado a las figuras jurídicas en controversia y, en consecuencia, hubiésemos resuelto que al momento en que se liquida una comunidad de bienes no puede tomarse en consideración lo recibido por un

alimentista en concepto de una pensión ex cónyuge. Eso es lo más correcto. Eso es lo más justo.


Ángel Colón Pérez
Juez Asociado