ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL III

| MARIBEL DELIZ JIMÉNEZ VÁZQUEZ<br><br>Apelada<br><br>v.<br><br>GINES ANTONIO MARTÍNEZ MANGUAL<br><br>Apelante | **KLAN202400477** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de San Juan<br><br>Civil Núm. K AL2018-0227<br><br>Sobre: Solicitud de Pensión Excónyuge |
|---|---|---|

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz, la Jueza Mateu Meléndez y la Jueza Prats Palerm.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 22 de julio de 2024.

Comparece ante nos, el Sr. Gines Antonio Martínez Mangual (señor Martínez o "el apelante") y nos solicita que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 11 de abril de 2024. Mediante el referido dictamen, el foro primario le impuso al señor Martínez una pensión alimentaria excónyuge de $1,869.71 mensuales, retroactiva a agosto de 2022.

Por los fundamentos que se exponen a continuación, **REVOCAMOS** la *Resolución* apelada.

## I.

El señor Martínez y la Sra. Maribel Deliz Jiménez (señora Jiménez o "la apelada") contrajeron matrimonio el 7 de enero de 1983. El 26 de junio de 2015, siendo notificada el 17 de julio de 2015, el foro primario

emitió una *Sentencia* en la que decretó roto y disuelto el vínculo matrimonial entre las partes.[1]

El 22 de mayo de 2018, la señora Jiménez presentó una *Demanda en Solicitud de Pensión Ex Cónyuge*.[2] Mediante *Sentencia* emitida el 30 de junio de 2022, el foro primario estableció una pensión excónyuge en favor de la apelada por la suma de $869.71 mensuales.[3]

Posteriormente, el 4 de agosto de 2022, la señora Jiménez presentó una *Urgente Moción en Solicitud de que se Revise la Pensión Fijada para Incluir el Gasto de Vivienda […]*.[4] Mediante esta, esbozó que la residencia donde vive se encontraba en proceso de ejecución de hipoteca, sin embargo, logró que el acreedor hipotecario le brindara oportunidad para que cualificara para un programa de "*loss mitigation*". Así pues, sostuvo que luego de la vista evidenciaria hubo una modificación en la hipoteca, para el cual comenzaría a pagar $2,192.41. Por ello, solicitó que fuera incluido el pago de la hipoteca como parte de la pensión alimentaria excónyuge.

El 22 de agosto de 2022, el señor Martínez presentó *Réplica a: Urgente Moción en Solicitud de que se Revise la Pensión Fijada para Incluir el Gasto de Vivienda […]*.[5] En esencia, esbozó que el asunto de la vivienda estuvo ante la consideración del Tribunal en el juicio celebrado, y del cual dispuso en la *Sentencia*, por lo

---

[1] *Sentencia*, anejo 4, págs. 12-15 del apéndice del recurso en oposición.
[2] *Demanda en Solicitud de Pensión Ex Cónyuge*, anejo 39, págs. 325-329 del apéndice del recurso.
[3] *Sentencia*, anejo 29, págs. 153-165 del apéndice del recurso. El 2 de septiembre de 2022, el foro primario emitió una *Sentencia Enmendada*. Véase, anejo 27, págs. 132-144 del apéndice del recurso.
[4] *Urgente Moción en Solicitud de que se Revise la Pensión Fijada para incluir el Gasto de Vivienda y Fijar Método para que el Demandado Pague el Plan Médico de la Alimentista*, anejo 28, págs. 145-147 del apéndice del recurso.
[5] *Réplica a: Urgente Moción en Solicitud de que se Revise la Pensión Fijada para Incluir el Gasto de Vivienda […]*, anejo 25, págs. 128-130 del apéndice del recurso.

que constituye cosa juzgada. Por lo tanto, solicitó que denegara la solicitud de revisión de pensión alimentaria.

Luego de varias incidencias procesales, el 13 de diciembre de 2022, el foro primario notificó una *Resolución*, mediante la cual determinó que, durante la vista evidenciaria la apelada no había evidenciado gastos de vivienda.[6] Por ello, al haber una alegación de gastos de vivienda, podría conllevar una modificación en la pensión establecida. Así pues, señaló fecha para vista sobre revisión de pensión alimentaria.

El 11 de enero de 2023, el apelante presentó *Moción Informando Sentencia Parcial y Sentencia Parcial Enmendada en el caso E AC2015-0400 de Liquidación Sociedad Gananciales Entre las Partes de Epígrafe y Solicitud que se deje sin efecto la pensión excónyuge establecida con los créditos que proceden*.[7] Solicitó se dejara sin efecto la pensión excónyuge, por ser innecesaria, ya que la apelada tenía bienes para cubrir sus necesidades esenciales.

El 6 de febrero de 2023, la apelada presentó *Moción en Cumplimiento de Orden y en Vehemente Oposición a Moción Radicada del Demandado Sometiendo Sentencia Parcial y Sentencia Parcial Enmendada en el caso EAC-2015-0400 y a su Solicitud de que se deje sin efecto pensión excónyuge establecida con los créditos que proceden*.[8] En síntesis, sostuvo que el pago de la

---

[6] *Resolución*, anejo 13, págs. 127-128 del apéndice del recuso.
[7] *Moción Informando Sentencia Parcial y Sentencia Parcial Enmendada en el caso E AC2015-0400 de Liquidación Sociedad Gananciales Entre las Partes de Epígrafe y Solicitud que se deje sin efecto la pensión excónyuge establecida con los créditos que procedes*, anejo 12, págs. 71-73 del apéndice del recurso.
[8] *Moción en cumplimiento de orden y en vehemente Oposición a Moción radicada del demandado sometiendo Sentencia Parcial y Sentencia Parcial Enmendada en el caso EAC-2015-0400 y a su Solicitud de que*

pensión excónyuge está fundamentado en la necesidad de alimentos de ésta, y la capacidad que tiene el apelante para pagarla. Asimismo, esbozó que las sentencias no son finales ni firmes, puesto que, se encuentran en proceso de reconsideración. A su vez, que el planteamiento del apelante es contradictorio, cuando incumple con el pago de la pensión excónyuge, provocando dilaciones en sus pagos.

Evaluadas las mociones, el 9 de febrero de 2023, el foro primario emitió una *Orden*, mediante la cual dispuso que estaría atendiendo las alegaciones en la vista de revisión de pensión excónyuge.[9] Asimismo, indicó que de haber un cambio en las circunstancias de las partes que afectaría la pensión, debía ser materia de prueba.

Posteriormente, entre los días 9 y 15 de agosto de 2023, y 3 de octubre de 2023, fueron celebradas las vistas de revisión de pensión excónyuge. Durante las vistas declararon la señora Jiménez y el supervisor de *Loss Mitigation Support* de Banco Popular.

Así las cosas, el 8 de abril de 2024 el foro primario notificó la *Resolución* apelada. Mediante el referido dictamen, tomando en consideración la prueba documental presentada y otorgándole entera credibilidad a los testigos el foro *a quo* realizó las siguientes determinaciones de hechos:

1. El 4 de agosto de 2022, la señora Jiménez Vázquez solicitó revisión de pensión excónyuge para que se considerara el gasto de vivienda.

2. Mediante *Resolución* emitida el 2 de octubre de 2023, en el caso E DI2014-0297, se denegó la solicitud de designación de Hogar Seguro promovida por la señora Jiménez Vázquez por entender la Honorable

---

*se deje sin efecto pensión excónyuge establecida con los créditos que proceden*, anejo 11, págs. 64-68 del apéndice del recurso.
[9] *Orden*, anejo 10, pág. 63 del apéndice del recurso.

Jueza que no se trataba de una controversia justiciable.

3. De esa *Resolución* se desprende que la demandante vive temporeramente con un hijo mayor de edad, que no depende económicamente de ella.

4. Al solicitar la mitigación de la deuda, en documento suscrito el 15 de marzo de 2022, la señora Jiménez alegó que el pago mensual del mantenimiento de Gran Vista II es de $130.00 mensuales.

5. En la carta de 15 de marzo de 2022, al solicitar a Banco Popular la mitigación de la deuda, la demandante alegó que recibe $3,000.00 de pensión excónyuge, $1,175.00 de Seguro Social y $1,000.00 de renta.

6. El banco consideró un ingreso de renta de $734.00, en atención a transacciones por ATH Móvil que la demandante evidenció.

7. A 1ro de julio de 2022, la deuda hipotecaria de la casa de Gran Vista II asciende a $465,833.63. Según Informe de Tasación de 22 de marzo de 2022, la propiedad fue tasada en $455,000.00. En este sentido, la venta de esta propiedad no generaría la ganancia para la demandante.

8. Mediante carta de 13 de abril de 2022, el Banco Popular informó al señor Martínez Mangual y a la señora Jiménez Vázquez sobre la aprobación de un periodo de prueba, requisito indispensable para cualificar para una modificación de su préstamo hipotecario número 0701510307. Los pagos requeridos en ese periodo de prueba eran tres pagos de $2,192.49 cada uno, a realizarse en las siguientes fechas: 1ro de mayo de 2022; 1ro de junio de 2022; y 1ro de julio de 2022.

9. El 25 de abril de 2022, la señora Jiménez Vázquez firmó el acuerdo aceptando la propuesta.

10. Desde mayo de 2022, hasta al menos junio de 2023, la demandante se mantenía realizando los pagos mensuales de $2,192.49 a Banco Popular con sus ingresos actuales.

11. Las cantidades destinadas por la demanda a compras en comercios como Home Depot, TJ Maxx, Costco, Marshalls y jardinería son sustanciales, considerando que se trata de una persona que no tiene empleo y que vive sola.

12. A 14 de julio de 2023, el balance de la deuda de la demandante con LUMA ascendía a $39,692.50.

13. El gasto promedio de energía eléctrica de la demandante, desde septiembre de 2022 (fecha en que dictamos *Sentencia*) hasta julio de 2023, es de $566.12.

14. El gasto promedio de agua de la demandante, desde septiembre de 2022 (fecha en que dictamos *Sentencia*) hasta julio de 2023, es de $44.57.

15. De los estados bancarios no surge un gasto de jardinero o, al menos, no se nos identificó.

16. Las cuentas de banco de la demandante evidencian un gasto mensual de $120.32 de Direct TV.

17. Desde que cumplió 65 años, el 23 de julio de 2022, la demandante ya no tiene gasto de plan médico porque se lo debitan directamente del Seguro Social, previo a la aportación de $1,172.00 que ella recibe mensualmente.

18. La contribución correspondiente al apartamento de Florida para el año de 2022 fue de $2,530.41.

19. Para fines contributivos, esa propiedad de Florida fue valorada en $145,000.00.

20. A tenor con *Resolución* de 15 de noviembre de 2021, al señor Martínez Mangual se le concedió un plan de pago de $1,000.00 mensuales para atender la deuda que había acumulado por concepto de pensión excónyuge.

21. A tenor con *Resolución* de 14 de marzo de 2023, a esa fecha el señor Martínez Mangual mantenía una deuda de $26,114.98. Para atender esa deuda se le ordenó realizar un abono de $7,800.00 y continuar el pago mensual de $1,000.00 hasta el saldo.

22. De la *Resolución* sobre Hogar Seguro emitida el 2 de octubre de 2023, en el caso E DI2014-0297, se desprende que la señora Jiménez Vázquez reconoció bajo juramento no tener interés en la búsqueda de otro hogar ni haber hecho la gestión alguna al respecto.

23. La señora Jiménez Vázquez admitió bajo juramento que no ha verificado ni le interesa verificar las rentas comparables en Orlando.

24. La señora Jiménez Vázquez tampoco ha gestionado tasación alguna que refleje el valor actual del apartamento de Orlando.

25. Para calcular la renta del apartamento de Orlando la señora Jiménez Vázquez no ha considerado el pago del mantenimiento ni las contribuciones que paga el apartamento.

26. La demandante no mantiene el cargo de Liberty por $45.00 contemplado en la *Sentencia de Pensión Excónyuge*.

27. La demandante no presentó prueba de medicamentos que requiera y que no estén cubiertos por Medicare.

28. La demandante ha sido, cuanto menos, parca en informar con certeza sus ingresos y gastos y evidenciarlos.

29. Este Tribunal tuvo que ir estado bancario por estado bancario para tratar de tener un cuadro más claro de las finanzas de la señora Jiménez Vázquez y, aun así, es ambiguo.

30. Para computar la pensión excónyuge vigente habíamos considerado los siguientes gastos mensuales de la señora Jiménez Vázquez:
   a. $23.71 – agua
   b. $600.00 – energía eléctrica
   c. $200.00 – jardinero
   d. $650.00 – alimentos y artículos de limpieza y mantenimiento del hogar
   e. $75.00 – comida fuera del hogar
   f. $75.00 – fumigador
   g. $400.00 – plan médico y medicamentos
   h. $100.00 – ropa y zapatos
   i. $120.00 – gasolina
   j. $30.00 – peaje
   k. $60.00 – celular
   l. $25.00 – recorte
   m. $50.00 – Direct TV
   n. $45.00 – Liberty
   o. $140.00 – mantenimiento de la urbanización en la que ubica la propiedad

31. Las cantidades originalmente contempladas para cada gasto se basaron en el testimonio de la demandante durante las vistas para pensión excónyuge que nos mereció credibilidad. No obstante, en las vistas de revisión se presentaron documentos que evidenciabas las cantidades específicas de los gastos.

32. La capacidad económica del señor Martínez Mangual no está en controversia.

Conforme a las determinaciones de hechos antes expuestas y el derecho aplicable concluyó, en lo pertinente, lo siguiente:

> Ya habíamos determinado, y nos mantenemos en esa determinación, que la señora Jiménez Vázquez satisface los requisitos que dispone nuestro ordenamiento para ser acreedora de una pensión excónyuge. Continuamos convencidos de que ella no cuenta con recursos suficientes para atender sus necesidades esenciales y de que el señor Martínez Mangual tiene la capacidad para satisfacer dicha pensión.
>
> […]
>
> Reiteramos que la señora Jiménez Vázquez no tiene una necesidad esencial de vivir en una casa de cuatro cuartos, seis baños, dos salas, un *family*, una terraza, cava de vino y una piscina o de mantener valiosas obras de arte. Tampoco nos parece razonable imponer al excónyuge la obligación de sostener un determinado estilo de vida.
>
> Sin embargo, esa es la vivienda en la que la demandante efectivamente reside en este momento y la que tenemos que considerar para fines de esta revisión. Es propio mencionar que ninguna de las partes aportó prueba que nos permita concluir cual sería un gasto razonable de vivienda para la señora Jiménez Vázquez quien, ciertamente, necesita un lugar donde vivir.
>
> […]
>
> [C]on respecto al pago de la vivienda, no entendemos que proceda conceder la totalidad del gasto de vivienda, sino aquella cantidad que le permita a la señora Jiménez Vázquez continuar cumpliendo el compromiso contraído.

En vista de lo antes expuesto, modificó la pensión excónyuge a $1,869.71 mensuales, efectivo a agosto de 2022.

Inconforme, el apelante presentó el recurso de apelación que nos ocupa y señaló los siguientes errores:

> 1. Erró el Honorable Tribunal A Quo al determinar que la apelada no cuenta con recursos suficientes para atender sus necesidades esenciales en contravención con

la prueba desfilada y las determinaciones de hechos realizadas.

2. Erró el Honorable Tribunal A Quo al aumentar la pensión excónyuge de $869.71 a $1,869.71 mensuales bajo el fundamento de que el apelante debía presentar prueba de cuál sería un gasto razonable de vivienda para la señora Jiménez Vázquez.

3. Erró el Tribunal A Quo al no relevar del pago de pensión excónyuge al Apelante Gines Martínez Mangual la misma es innecesaria porque los gastos indicados ya no existen, no hay prueba de los mismos, son excesivos debido al mantenimiento de una propiedad que la Apelante no necesita para cubrir su necesidad de vivienda.

El 8 de julio de 2024, la apelada presentó su *Alegato en Oposición a Recurso de Apelación*.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver el asunto ante nuestra consideración.

**II.**

**-A-**

Según el Artículo 109 del Código Civil de Puerto Rico de 1930, 31 LPRA sec. 385, el deber de alimentar que existe entre los cónyuges continúa aún después de decretado el divorcio.[10] Lo anterior, debido a que, "disuelto el matrimonio y, en consecuencia, haber desaparecido el deber de socorro mutuo entre los cónyuges como efecto personal del matrimonio, uno de ellos puede caer en una situación de indigencia y necesidad tal que le impida hacer frente a las exigencias vitales." R. E. Ortega-Vélez, *Compendio de Derecho de Familia*, Publicaciones JTS, 2000, pág. 587. El derecho a solicitar alimentos excónyuge surge del derecho

---

[10] El Código Civil de 1930 fue derogado por la Ley Núm. 55-2020, conocida como el Código Civil de Puerto Rico de 2020. Sin embargo, para propósitos de la adjudicación de este caso estaremos citando el Código Civil derogado, el cual estaba vigente al momento en que surgieron los hechos que dieron lugar a la presente controversia.

fundamental de todo ser humano a existir y desarrollar plenamente su personalidad. *Correa Márquez v. Juliá Rodríguez,* 198 DPR 315, 326 (2017). En ese contexto, "las pensiones alimentarias excónyuge están revestidas del más alto interés público." *Íd.* Conforme a esos principios, el Artículo 109 del Código Civil de 1930, *supra,* establece lo siguiente:

> Si decretado el divorcio por cualesquiera de las causales que establece el Artículo 96 de este Código, cualesquiera de los excónyuges no cuentan con suficientes medios para vivir, el Tribunal de Primera Instancia podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del otro cónyuge.

> El tribunal concederá los alimentos a que se refiere el párrafo anterior, teniendo en cuenta, entre otras, las siguientes circunstancias:

> (a) Los acuerdos a que hubiesen llegado los excónyuges.

> (b) La edad y el estado de salud.

> (c) La cualificación profesional y las probabilidades de acceso a un empleo.

> (d) La dedicación pasada y futura a la familia.

> (e) La colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge.

> (f) La duración del matrimonio y de la convivencia conyugal.

> (g) El caudal y medios económicos y las necesidades de uno y otro cónyuge.

> (h) Cualquier otro factor que considere apropiado dentro de las circunstancias del caso.

> Fijada la pensión alimenticia, el juez podrá modificarla por alteraciones sustanciales en la situación, los ingresos y la fortuna de uno u otro excónyuge. La pensión será revocada mediante resolución judicial si llegase a hacerse innecesaria, o por contraer el cónyuge divorciado acreedor a la pensión nuevo matrimonio o viviese en público concubinato.

Al interpretar el referido artículo, en *Morales v. Jaime,* 166 DPR 282, 306 (2008) el Tribunal Supremo explicó que, al considerar otorgar la pensión excónyuge, los criterios enumerados en el Artículo 109 del Código Civil de Puerto Rico de 1930, *supra*, se toman en consideración sólo para "fijar el monto de la obligación y no como una carga probatoria adicional que deba suplir el reclamante." *Correa Márquez v. Juliá Rodríguez*, supra, pág. 326. Estos criterios fueron elaborados para guiar la discreción del juzgador respecto a la solicitud del excónyuge reclamante y, una vez determinada la necesidad por cualquier medio, estos factores no pueden utilizarse para descartar la pensión. *Morales v. Jaime*, supra, pág. 308 y 310.

Sobre la cualificación profesional y las probabilidades de empleo, este criterio no impone al excónyuge reclamante la obligación específica de demostrar que no es joven, que no está en buen estado de salud y que no tiene capacidad para trabajar. *Íd.* En cuanto a la colaboración del excónyuge reclamante en las actividades mercantiles, industriales o profesionales del otro cónyuge, este indica que la colaboración plena en las actividades del excónyuge reclamado debe suponer un incremento en la pensión concedida. *Íd.*, pág. 309. De igual forma, la duración del matrimonio y la convivencia conyugal se considera para determinar la cuantía de la pensión. *Íd.*

De otra parte, al interpretar las disposiciones del Artículo 109 del Código Civil de Puerto Rico de 1930, *supra*, nuestro Tribunal Supremo explicó que "[e]l criterio principal al momento de conceder una pensión

excónyuge es el binomio constituido entre la necesidad económica por parte del alimentista y la capacidad económica por parte del alimentante." *Correa Márquez v. Juliá Rodríguez,* supra, pág. 326. Sobre la necesidad económica, esta debe surgir como consecuencia del divorcio. *Íd.* Es decir, "cuando la necesidad del reclamante esté vinculada al divorcio, o surja como consecuencia de este, deben reclamarse alimentos al excónyuge." *Íd.*, pág. 302.

La necesidad económica puede surgir por la terminación del deber de socorro entre los esposos o por falta del sustento cotidiano al que estaba acostumbrado el cónyuge reclamante. *Correa Márquez v. Juliá Rodríguez*, supra, pág. 303. Según la tratadista, Ruth Ortega-Vélez, al otorgar una pensión, los tribunales tienen amplia discreción para aplicar los criterios establecidos en la ley y si ejercen esa discreción con justicia y equidad, las sentencias sobre alimentos excónyuge, serán sostenidas por un tribunal de superior jerarquía. Ortega-Vélez, Compendio de Derecho de Familia, *op. cit.,* pág. 588.

## III.

Es necesario destacar que, las determinaciones de hechos basadas en la apreciación de la prueba oral y la credibilidad de los testigos que realicen los foros primarios merecen la mayor deferencia judicial, pues son estos los que tuvieron la oportunidad de evaluar el comportamiento de los testigos y sus reacciones durante las vistas. Nuestro Tribunal Supremo estableció que este foro intermedio está impedido de intervenir con la apreciación de la prueba oral en ausencia de una transcripción o exposición narrativa de una prueba oral.

Véase, *Santiago Ortiz v. Real Legacy Assurance Company, Inc.*, 206 DPR 194, 219 (2021); *Santiago Montañez v. Fresenius Medical,* 195 DPR 476, 490 (2016); *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 771 (2013).

En el caso de autos, el señor Martínez señaló tres (3) errores que alegadamente cometió el foro primario. Nos obstante, por estar estrechamente relacionados, los discutiremos en conjunto. En su primer señalamiento de error, el apelante indicó que el foro *a quo* erró al determinar que la señora Jiménez no cuenta con suficientes recursos para atender sus necesidades esenciales, en contravención a la prueba y determinaciones de hechos realizadas. En su segundo señalamiento de error, sostuvo que el foro primario incidió al aumentar la pensión excónyuge de $869.71 a $1,869.71 mensuales, bajo el fundamento de éste que no presentó prueba sobre lo que sería un gasto razonable de vivienda para la apelada. Asimismo, en su tercer señalamiento de error, esbozó que el foro primario erró al no relevarlo del pago de la pensión excónyuge, cuando los gastos indicados no existen, y son excesivos.

Nuestro ordenamiento jurídico ha establecido que la concesión o denegatoria de una pensión de alimentos excónyuge recae sobre la base de la necesidad del excónyuge reclamante y la capacidad económica del excónyuge a quien se le reclama. Es decir, la pensión únicamente se concederá cuando el excónyuge reclamante demuestre que no cuenta con suficientes medios para vivir y acredite la solvencia económica de su excónyuge. Luego de ello evidenciarse, entonces, le corresponderá al Juzgador o Juzgadora fijar la pensión, tomando en cuenta, entre otros, los ocho (8) criterios esbozados en

el Artículo 109 del Código Civil de Puerto Rico de 1930, *supra*.

Además, para demostrar esa necesidad se requiere presentar prueba pertinente tendente a establecer que no se cuenta con suficientes medios para vivir, y no necesariamente que la persona es adulta mayor, que está incapacitada o es incapaz de trabajar. *Morales v. Jaime*, supra, págs. 311-31. De manera que, una alegación a los efectos de que se carece de medios suficientes para vivir y que el excónyuge cuenta con suficientes medios, ello sin sustentarse, resulta insuficiente para que se decrete la concesión de los alimentos.

En el caso ante nuestra consideración, el foro primario celebró varias vistas, en las cuales escuchó el testimonio de los testigos, y le adjudicó credibilidad que le merecía a los testimonios presentados. Luego de evaluar la prueba documental y testifical determinó, entre otras cosas, que conforme a los requisitos que dispone nuestro ordenamiento, la señora Jiménez era acreedora de una pensión excónyuge. No obstante, también planteó que "la demandante ha sido cuanto menos parca al momento de exponer sus finanzas." Por ello, concluyó que los gastos que consideró fueron aquellos para los cuales presentó evidencia. Por lo tanto, en cuanto a la vivienda, dispuso que el gasto sería aquel que le permitiera a la señora Jiménez continuar cumpliendo con el compromiso contraído con el banco en el proceso de *loss mitigation*.

Según surge del expediente, las partes se casaron en el año 1983 y estuvieron casadas más de treinta años, cuando decidieron poner fin a su matrimonio en el año 2015. La apelada no trabajó durante los últimos 24 años

de su matrimonio, se dedicó a las tareas del hogar, y al cuidado de sus hijos. Mientras que, el apelante era que brindaba el sustento del hogar familiar y quien administraba los gastos. Al presente, la señora Jiménez tiene sobre sesenta y cinco años, recibe seguro social por la suma de $1,175.00, y tiene plan médico a través de Medicare. Por otro lado, el señor Martínez tiene la capacidad económica para satisfacer dichas necesidades.

La apelada se ha mantenido viviendo sola, en el hogar matrimonial el cual tiene una hipoteca, la cual para el 1 de julio de 2022, ascendía a $465,833.63. Mientras que la tasación de la propiedad fue de $455,000.00. La apelada solicitó la modificación de su préstamo hipotecario, donde luego de un periodo de prueba, firmó el acuerdo aceptando la propuesta por la cantidad de $2,192.49. Por ello, acudió al foro primario para solicitar una revisión en la pensión alimentaria excónyuge, y se tomara en consideración dicho gasto.

Los gastos mensuales que el foro primario determinó que la señora Jiménez está incurriendo ascienden a $4,248.03.[11] No obstante, para efectos de la pensión excónyuge, le descontó $734.00 que recibe la apelada por la renta del apartamento en Florida, además de $1,175.00 que recibe de Seguro Social. A su vez, indicó que la

---

[11] Los gastos mensuales que el foro primario procedió a considerar para establecer la pensión excónyuge fueron los siguientes:
  a) $44.57 – agua
  b) $566.12 – energía eléctrica
  c) $650.00 – alimentos y artículos de limpieza y mantenimiento del hogar
  d) $75.00 – comida fuera del hogar
  e) $75.00 – fumigador
  f) $100.00 – ropa y zapatos
  g) $120.00 – gasolina
  h) $30.00 – peaje
  i) $119.53 – celular
  j) $25.00 – recorte
  k) $120.32 – Direct TV
  l) $130.00 – mantenimiento de la urbanización en la que ubica la propiedad
  m) $2,192.49 – pago de la propiedad de Gran Vista II.

señora Jiménez recibe los $1,000.00 correspondientes al plan de pago de la deuda que había acumulado el señor Martínez. Por ello, modificó la pensión excónyuge de $869.71 a $1,869.71 mensuales, retroactivos a agosto de 2022.

Luego de analizar el expediente del caso, entendemos que el foro primario erró al modificar la pensión de alimentos excónyuge a favor de la señora Jiménez. Según surge del expediente, el foro *a quo* reconoció que la apelada tiene un apartamento en Kissimmee, Florida valorado en $145,000.00. Sin embargo, es la señora Jiménez que no desea irse a vivir a Florida, ni venderlo, por ser alegadamente uno de sus únicos sustentos.

No obstante, aunque no se le puede requerir se mude a Florida para que tenga allá su residencia principal, sí reconocemos que ese apartamento es un activo que la señora Jiménez tiene disponible. Así pues, antes de acudir a los activos del apelante debe hacer uso efectivo de los activos con los que cuenta. La apelada tiene un apartamento en la Florida y una residencia muy valiosa en Puerto Rico, aunque esta tiene una considerable deuda hipotecaria. La señora Jiménez tiene su ingreso del Seguro Social y la pensión otorgada en la sentencia de 30 de junio de 2022. Además, ella podría vender el apartamento de Florida para que así pueda manejar las cuantiosas deudas que mantiene con acreedores como LUMA y con el banco que tiene la hipoteca de su vivienda principal. Igualmente, ella podría relocalizar su vivienda principal a una más ajustada a sus circunstancias presentes. En fin, ella tiene activos

que juntos a sus ingresos corrientes son suficientes para vivir decentemente.

Reiteramos la expresión del foro primario, en cuanto a que el propósito de la pensión excónyuge no es procurar que la apelada mantenga el estilo de vida que tenía cuando estuvo casada, sino que busca garantizar que la persona cuente con lo requerido para sus necesidades esenciales. Es por ello, que le recordamos a la señora Jiménez que debe ser proactiva para aminorar las deudas que alega tener, y no cruzarse de brazos.

Así pues, resolvemos que en el caso de autos el foro primario incidió al modificar y aumentar la pensión alimentaria excónyuge a favor de la señora Jiménez.

**IV.**

Por los fundamentos antes expuestos, **REVOCAMOS** la *Resolución* apelada. Por lo tanto, se mantiene la pensión alimentaria excónyuge de **$869.71** mensuales, según fue dispuesta en la *Sentencia* de 30 de junio de 2022.[12]

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[12] Ante este Tribunal no está en revisión la deuda del apelante con la apelada sobre la presente pensión excónyuge, por ello nada tenemos que disponer en cuanto a eso. Esto significa que el señor Martínez tiene que seguir abonando los $1,000.00 de la deuda que mantiene con la señora Jiménez.